# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ESTEBAN VARGAS, § § § *Plaintiff*, § § v. § § SEAMAR DIVERS INTERNATIONAL, § LLC, SEAMAR MARINE SERVICES, LLC, § SEAMAR DIVERS, INC., and THE § SEAWOLF, § § *Defendants*. § | CIVIL ACTION NO. 2:10-CV-178-TJW Fed. R. Civ. P. 9(h) IN ADMIRALTY |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Before the Court is Defendants Seamar Divers International, LLC's, Seamar Marine Services, LLC's, and Seamar Divers, Inc.'s (collectively "Defendants" or "Seamar") Motion to Transfer Venue (Dkt. No. 26). In their motion, Defendants ask the Court to transfer this case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Having considered the venue motion, the briefing of the parties, the evidence, and the applicable law, the Court GRANTS the motion to transfer venue and TRANSFERS this case to the Southern District of Texas. The balance of the private and public factors demonstrates that the Southern District of Texas is "clearly more convenient" than the venue chosen by Plaintiff Esteban Vargas ("Plaintiff" or "Mr. Vargas"). *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) (en banc).

Also pending before the Court is Defendants' Objections to and Motion to Strike the Affidavits of Earl Ludgood, Daryl Derryberry and Esteban Vargas (Dkt. No. 40). In their motion, the Defendants object to certain statements made by Earl Ludgood in his affidavit attached to Plaintiff's response to the motion to transfer venue as well as the entirety of the affidavits of Daryl Derryberry and Esteban Vargas attached to Plaintiff's response to the motion to transfer venue. The Court has reviewed the affidavits, the briefing of the parties, and the applicable law and is of the opinion that Defendants' motion to strike should be DENIED.

## II. Factual and Procedural Background

Plaintiff filed his Original Complaint on May 28, 2010 and then filed his First Amended Complaint on April 11, 2011, pursuant to the Jones Act, general maritime law, and the Longshore-Harbor Workers Compensation Act. *See* Original Complaint (Dkt. No. 1), First Amended Complaint ("Amended Complaint") (Dkt. No. 48). The Amended Complaint alleges causes of action for negligence, unseaworthiness, and breach of the duty of maintenance and care for injuries the Plaintiff allegedly sustained while employed by Defendants. Plaintiff contends that he sustained a wound on his ankle while in the Defendants' employ and that he was doused with sewage while working on pipes on the vessel the DSV SEAWOLF ("Seawolf") while it was dry docked in Louisiana undergoing repairs and maintenance. Amended Complaint at ¶ 3.01-5.01. Plaintiff alleges that he contracted endocarditis as a result of either or both of these incidents. *Id*. at ¶ 5.01.

The incidents at the heart of this case occurred in March and April of 2008[1] while the Seawolf was dry docked in either Amelia or Houma, Louisiana. *See* Affidavit of Emmett

---

[1] The Original Complaint as well as the briefing on the Motion to Transfer Venue states that the sewage incident

Cutchall ("Cutchall Affidavit") at ¶ 3, Exhibit B to Motion to Transfer (Dkt. No. 26-2) (stating that the Bollinger shipyard where the Seawolf was dry docked is located in Amelia, Louisiana); *but see* Affidavit of Esteban Vargas ("Vargas Affidavit") at 1, Exhibit C to Response to Motion to Transfer (Dkt. No. 34-3) (stating that the Bollinger facility is located in Houma, Louisiana). Houma is in Terrebonne Parish in the Eastern District of Louisiana, and Amelia is in St. Mary Parish in the Western District of Louisiana. At the time of the incidents, Plaintiff lived in the Houston, Texas area, within the Southern District of Texas. *See* Deposition of Esteban Vargas ("Vargas Depo") at 36:8-15, 38:17-40:24, Exhibit A to Motion to Transfer (Dkt. No. 26-1). It appears that Plaintiff received most of his treatment after the incident from various doctors and medical facilities in the Houston area. *See* Vargas Depo at 78:25-79:2, 80:2-4, 83:12-25, 84:1-25, and 85:1; Plaintiff's Initial Disclosures, Exhibit F to Motion to Transfer (Dkt. No. 26-6); Plaintiff's Notice of Intention to Take Deposition on Written Questions, Exhibit E to Motion to Transfer (Dkt. No. 26-5). Plaintiff moved to West Hialeah, Florida sometime in 2010 and lived there at the time he filed his Original Complaint. *See* Original Complaint at ¶ 2.01, Vargas Depo at 106:12-20. After filing the Original Complaint, Plaintiff moved to Tyler, Texas, which is within the Eastern District of Texas. *See* Vargas Depo at 11:23-12:7; Amended Complaint at ¶ 2.01. In his deposition, Mr. Vargas stated that he moved to Tyler in order to be closer to his attorneys. Vargas Depo at 93:17-94:4.

Defendant Seamar Marine Services. LLC was the owner and operator of the Seawolf, and Seamar Divers International, LLC was the charterer of the Seawolf at the time of the incidents.

---

occurred in June 2008 and that the injury to Plaintiff's ankle happened at some unspecified time before the sewage incident. *See* Original Complaint at ¶¶ 3.01-5.01; Motion to Transfer at 4, et. seq. However, the Amended Complaint states that the sewage incident occurred in April 2008 and the injury to Plaintiff's ankle occurred in March 2008. Amended Complaint at ¶¶ 3.01-5.01.

*See* Affidavit of Daniel C. McIntee ("McIntee Affidavit") at ¶ 6, Exhibit C to Motion to Transfer (Dkt. No. 26-3). All three of the Seamar entities are Texas corporations with their principal place of business in Stafford, Texas, in the Southern District of Texas. *See* McIntee Affidavit at ¶¶ 2-4; Amended Complaint at ¶¶ 2.02-2.04. Defendants' motion to transfer states that none of the Seamar entities has an office in the Eastern District of Texas; however, Defendants have provided no support for this assertion. The Seawolf is currently operating off of the Texas coast in the Gulf of Mexico, out of Port O'Connor, Texas. *See* McIntee Affidavit at ¶ 12.

### III. Motion to Strike Affidavits

Defendants ask the Court to strike various statements in the affidavit of Earl Ludgood attached to Plaintiff's response to the motion to transfer venue because they are (1) lacking foundation, (2) not based on personal knowledge, (3) irrelevant, (4) legal conclusions, (5) conclusory allegations, and (6) unsupported assertions or opinions with no rational basis. The Court OVERRULES Defendants' various objections to the affidavit of Earl Ludgood and DENIES the motion to strike portions of his affidavit.

Mr. Ludgood was employed by Seamar Marine Services, LLC. He worked with the Plaintiff on the Seawolf and was present during at least the sewage incident giving rise to this case. Mr. Ludgood's affidavit states that he has personal knowledge of the facts to which he testifies based on his work on the Seawolf with the Plaintiff. Nothing on the face of the affidavit causes the Court to question Mr. Ludgood's assertions, and the Defendants have offered nothing to suggest that Mr. Ludgood does not or cannot have personal knowledge of the facts to which he testifies. Defendants also argue that many of the statements made by Mr. Ludgood are unsupported opinions or legal conclusions. The Court disagrees. The statements all appear to be

4

based on Mr. Ludgood's experience and perceptions and are either factual statements or permissible lay opinion testimony. *See* FED. R. EVID. 701(lay opinion testimony is admissible so long as it is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other special knowledge . . .").

Defendants also object to the affidavit of Daryl L. Derryberry attached to Plaintiff's response to the motion to transfer venue. Mr. Derryberry is one of Plaintiff's attorneys in this case, and his affidavit recounts the status of discovery in this case and the evidence that Plaintiff expects to present at trial, including potential witnesses and the subjects on which they are expected to testify. Defendants object to Mr. Darryberry's affidavit as (1) irrelevant, (2) unsupported assertions, (3) opinions with no rational basis, (4) conclusory allegations, (5) lacking foundation, and (6) not based on personal knowledge. Defendants do not cite to any particular statements contained in Mr. Derryberry's affidavit to support their motion, but rather make these blanket objections to the affidavit of Mr. Derryberry as a whole. Defendants also object to the affidavit of Plaintiff attached to the response to the motion to transfer. Defendants make the same blanket objections to Mr. Vargas's affidavit that they made to Mr. Derryberry's affidavit. The vast majority of Mr. Vargas's affidavit recounts facts regarding his employment with Seamar, the incidents giving rise to this action, and his current residence. This information is clearly within Mr. Vargas's personal knowledge and is relevant to the motion to transfer venue. Additionally, Mr. Vargas's affidavit identifies several potential witnesses and the subject matter of their expected testimony.

The Court recognizes that some of Mr. Derryberry's and Mr. Vargas's statements regarding what knowledge various individuals may have relevant to the case are somewhat conclusory. However, the Court has criticized parties in the past for failing to provide sufficient evidence in support of their motions to transfer venue. *See DE Technologies, Inc. v. E4X Inc.*, Case No. 2:10cv139, in the United States District Court for the Eastern District of Texas, Dkt. No. 34 (criticizing the proof provided in support of a motion to transfer venue and stating that "[i]t is not sufficient to merely make bald assertions or unqualified assumptions in the attorney's briefs"). *Volkswagon II*, on the other hand, makes it clear that parties are not required to provide affidavits from every potential witness indicating what specific testimony they might offer. 545 F.3d at 317, n.12 ("In the *forum non conveniens* context, however, we have rejected the imposition of a blanket rule requiring affidavit evidence") (internal quotation and citation omitted). Accordingly, affidavit evidence from the parties or their attorneys identifying potential witnesses and the subjects on which they are expected to testify is precisely the type of evidence that this Court expects with regard to a motion to transfer under section 1404(a). For these reasons, the Court OVERRULES Defendants' objections to the affidavits of Mr. Derryberry and Mr. Vargas attached to Plaintiff's response to the motion to transfer and DENIES Defendants' motion to strike these affidavits.

IV.  **Motion to Transfer Venue**

    A.  **Applicable Law Regarding Motions to Transfer**

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court has "broad discretion in deciding whether to order a transfer."

*Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998), *quoting Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987).

The Fifth Circuit has enunciated the standard to be used in deciding motions to transfer venue. *See Volkswagen II*, 545 F.3d at 314-15. The Fifth Circuit ruled that "§ 1404(a) venue transfers may be granted 'upon a lesser showing of inconvenience' than *forum non conveniens* dismissals" and that "the burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *Id.* at 314 (*citing Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The Court held that the moving party bears the burden of showing "good cause," which the Court explained is satisfied when "the movant demonstrates that the transferee venue is clearly more convenient." *Id*. at 315.

The initial threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. In making the convenience determination, the Fifth Circuit considers several private and public interest factors, none of which are given dispositive weight. *Id.* The *Volkswagon II* court noted that the relevant factors to be considered in ruling on a 1404(a) motion are the same as those in the *forum non conveniens* context. *Id*. at 314, n. 9 (*citing Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53, 56 (5th Cir. 1963)). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315. The public interest factors are: (1) the

7

administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Id.* These factors are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. *Id*. (*citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). In *Volkswagen II*, the Fifth Circuit also opined on the weight to be given to the plaintiff's choice of forum. *Id*. The Court held that the movant's "good cause" burden reflects the appropriate deference to this factor. *Id*.

B.  **Proper Venue**

The threshold "determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed" in the first place. *Volkswagen I*, 371 F.3d at 203. Neither party disputes that this case could have been brought in the Southern District of Texas, and this Court agrees. Thus, the threshold determination is met.

C.  **Private and Public Interest Factor Analysis**

1.  *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first private interest factor to consider. "That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. Most of the documentary evidence in this case will be Plaintiff's employment records with Seamar, Seamar's corporate records, and Plaintiff's medical records. These vast majority of this information is located in the Houston area. Defendants corporate records are all located at Seamar's principal place of business in Stafford, Texas, which is within the Southern District of

Texas. *See* McIntee Affidavit at ¶¶ 6 and 7. The records include records concerning the certification, inspection, outfitting, maintenance, operations, support services, manning, and management of the Seawolf at the time of the events giving rise to this case. *Id*. at ¶ 7. These records also presumably include records of the Plaintiff's employment history with Seamar. *Id*. at ¶ 7. Additionally, Plaintiff lived in Houston at the time the incidents giving rise to his causes of action occurred and sought medical treatment for his injuries and illness in Houston from roughly fifteen different doctors and medical facilities in the Houston Area. *See* Vargas Depo at 78:25-79:2, 80:2-4, 83:12-25, 84:1-25, and 85:1; Plaintiff's Initial Disclosures; Plaintiff's Notice of Intention to Take Deposition on Written Questions. Thus, the majority of Plaintiff's medical records are also located in the Houston area. Defendants argue that the Seawolf is currently operating out of Port O'Connor, Texas, in the Southern District and that this also weighs in favor of transfer. However, the Court notes that, based on Defendants' own affidavits, the Seawolf is currently operating offshore in the Gulf of Mexico. The Seawolf, therefore, would appear to be outside of even the Southern District. It is also highly unlikely that any court would view the Seawolf since it is currently out to sea. Thus, the Court gives little weight to the current location of the Seawolf.

However, because the vast majority of the documentary evidence—Seamar's records and Plaintiff's medical records—is located in the Houston area, this factor weighs in favor of transfer to the Southern District of Texas.

### 2. Availability of Compulsory Process

The next private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. Rule 45(c)(3)(A)(ii) limits the Court's absolute subpoena

power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Volkswagen II*, 545 F.3d at 316. This factor will weigh more heavily in favor of transfer when more non-party witnesses reside within the transferee venue. *See id.* This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *See id.*

It is important to note that this factor considers only non-party witnesses. In other words, witnesses that are a party or a party's officers are not considered. In addition, current employees have an employment relationship with a party and should be considered party witnesses because they can be presumed to appear willingly on behalf of their party employer. *See Emanuel v. SPX Corp. OCT Tools Div.*, 2009 WL 3063322, at *5, n.2 (E.D. Tex. 2009) ("Current OTC employees, however, appear to have an employment relationship with SPX and should be considered party witnesses"); *FUL Inc. v. Unified School Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993) ("Because it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily, . . . the court limits its discussion to potential non-party witnesses). Although the court in *Volkswagen II* phrased the factor as "the availability of compulsory process to secure the attendance of *witnesses*," *Volkswagen II*, 545 F.3d at 315 (emphasis added), it is apparent that the court meant to consider only *non-party* witnesses.

First, the court in *Volkswagen II* focused on the non-party witnesses in its analysis. *Id.* at 316 ("As in *In re Volkswagen I*, the *non-party* witnesses located in the city where the collision occurred 'are outside the Eastern District's subpoena power for deposition under Fed. R. Civ. P. 45(c)(3)(A)(ii),' and any 'trial subpoenas for *these* witnesses to travel more than 100 miles would be subject to motions to quash under Fed. R. Civ. P. 45(c)(3).'") (emphasis added).

Second, the venue transfer analysis adopted by the Fifth Circuit in *Volkswagen II* based its analysis on the "*Gilbert* factors," which were set forth by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). *See Volkswagen II*, 545 F.3d at 315 ("[W]e have adopted the private and public interest factors first enunciated in [*Gilbert*]"). The "availability of compulsory process" factor in *Gilbert* reads specifically as "availability of compulsory process for attendance of *unwilling*." *Gilbert*, 330 U.S. at 508 (emphasis added). Further, the Supreme Court in *Piper Aircraft Co v. Reyno*, also endorsed the *Gilbert* factor of "availability of compulsory process for attendance of unwilling . . . ." 454 U.S. 235, 241 (1981); *see also Volkswagen II*, 545 F.3d at 313-314 (relying on *Piper Aircraft* in addition to *Gilbert*). Thus, the history of this factor shows it also was based on whether a witness would willingly or voluntarily appear. This further supports an interpretation that the "availability of compulsory process" factor applies only to non-party witnesses. The reasoning is that party witnesses, such as employees of a corporate party, can be presumed to willingly or voluntarily appear for the party. *See FUL Inc. v. Unified School Dist. No. 204*, 839 F. Supp. 1307, 1311-12 (N.D. Ill. 1993) ("Because it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily, . . . the court limits its discussion to potential non-party witnesses."). In other words, when a party has control over the witness because the witness is an employee, it is unlikely that the Court will be required to compel the employee witness to attend. The party, as the witnesses' employer, will likely be able to compel the witnesses' attendance without intervention by the Court. Thus, the Court only considers the non-party witnesses for the purposes of this factor. *Accord Emanuel v. SPX Corp. OTC Tools Div.*, 6:09-cv-220, 2009 WL 3063322, at *5, n.2 (E.D. Tex. Sept. 21, 2009) ("Current OTC employees, however, appear to have

an employment relationship with SPX and should be considered party witnesses"). Accordingly, the Court will not consider Defendants' officer and employee witnesses under this factor.

Defendants have identified 13 of Plaintiff's doctors located in the Houston area over whom the Houston Division of the Southern District would have absolute subpoena power. Defendants have also identified Brent Jean as a third-party witness. Mr. Jean was the General Manager of Seamar Divers International, LLC and Seamar Marine Services, LLC at the time of the incidents and is expected to testify concerning the shipyarding of the Seawolf in 2008, including the nature and extent of the major repairs and refurbishment activities to the vessel. *See* Affidavit of Brent Jean ("Jean Affidavit") at ¶¶ 2-4, Exhibit D to Motion to Transfer (Dkt. No. 26-4). Mr Jean resides in both Beaux Bridge, Louisiana, and Houston, Texas. *See* Jean Affidavit at ¶ 5. Mr. Jean has a residence in Houston and travels there regularly for work, so the Southern District has absolute subpoena power over him while he is in Houston.

Conversely, Plaintiff lists three third party witnesses who are located in Tyler, Texas, within the Eastern District of Texas. The witnesses are Plaintiff's current cardiologist, Dr. Kyle Smith, Plaintiff's landlord, Maria Galindez, and Plaintiff's supervisor at work, Stephen Lynch. *See* Affidavit of Daryl L. Derryberry ("Derryberry Affidavit"), Exhibit B to Response to Motion to Transfer (Dkt. No. 34-2), Vargas Affidavit. Dr. Kyle is expected to testify on Plaintiff's health condition as it relates to his recovery from endocarditis and his current physical condition. *Id*. Ms. Galindez is expected to testify concerning Plaintiff's current physical limitations. *Id*. Similarly, Mr. Lynch is expected to testify as to Plaintiff's current capabilities to perform work. *Id*. All three of these witnesses are within the Eastern District of Texas and subject to this Court's

absolute subpoena power, but would not be subject to the absolute subpoena power of the Southern District of Texas.

Defendants also list several additional third party witnesses who live out of state. Those witnesses include: Daniel Duplantis who lives in Morgan City, Louisiana; Emmett Cutchall who lives in Poplarville, Mississippi; and Earl Ludgood who lives in Mobile, Alabama. *See* Affidavit of Daniel Duplantis ("Duplantis Affidavit"), Exhibit K to Motion to Transfer (Dkt. No. 26-11); Unsworn Declaration of Emmett Cutchall ("Cutchall Declaration"), Exhibit N to Reply to Motion to Transfer (Dkt. No. 39-1); Affidavit of Earl Ludgood ("Ludgood Affidavit"), Exhibit A to Response to Motion to Transfer (Dkt. No. 34-1). Because all three of these witnesses live out-of-state and more than 100 miles from both the Eastern and Southern Districts of Texas, neither court would have subpoena power over them. Accordingly, they are irrelevant to this factor.

To summarize, Defendants have identified 14 third-party witnesses subject to the absolute subpoena power of the Southern District of Texas but not the Eastern District of Texas, and Plaintiffs have identified three third-party witnesses who are subject to the absolute subpoena power of the Eastern District of Texas but not the Southern District of Texas. The remainder of the witnesses identified are either party witnesses for whom compulsion to appear will likely not be necessary, or third party witnesses over whom neither court has absolute subpoena power. Because significantly more third party witnesses reside in or around Houston and within the absolute subpoena power of the Southern District, this factor weighs in favor of transfer to the Southern District of Texas.

### 3. *Cost of Attendance for Willing Witnesses*

Next, the Court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Southern District of Texas. The Fifth Circuit has explained:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205. Accordingly, the Fifth Circuit has established the 100 mile rule and gives substantial weight to this factor when witnesses will be required to travel more than 100 miles to attend trial. The Court must consider the convenience of both the party and non-party witnesses. *See id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d. 761, 765-66 (E.D. Tex. 2009).

The Defendants have identified seven potential officer and employee witnesses. *See* Affidavit of Eloy Anaya ("E. Anaya Affidavit"), Exhibit G to Motion to Transfer (Dkt. No. 26-7); Affidavit of Fanny Anaya ("F. Anaya Affidavit"), Exhibit H to Motion to Transfer (Dkt. No. 26-8); McIntee Affidavit; Affidavit of Kerman Williams ("Williams Affidavit"), Exhibit I to Motion to Transfer (Dkt. No. 26-9); Affidavit of Marcie Skinner ("Skinner Affidavit"), Exhibit J to Motion to Transfer (Dkt. No. 26-10); Declaration of Daman Butler ("Butler Declaration"), Exhibit O to Reply to Motion to Transfer (Dkt. No. 39-2); and Affidavit of Christopher Sheaves ("Sheaves Affidavit"), Exhibit P to Reply to Motion to Transfer (Dkt. No. 39-3). Six of these witnesses live in the Houston area, within the Southern District of Texas, but more than 100 miles from the Eastern District of Texas. The Houston Division of the Southern District of Texas is

clearly more convenient for these six witnesses than the Eastern District of Texas. The seventh employee witness, Christopher Sheaves, lives in the Philippines. Although his affidavit states that it would be more convenient for Mr. Sheaves to travel to Houston for trial than to Marshall, Mr. Sheaves provides no basis for this assertions, and the Court believes that the difference in the burden in traveling from the Philippines to either Houston or Marshall is negligible.

As discussed above, Defendants have also identified roughly 13 of Plaintiff's treating physicians who are located in the Houston area for whom a trial in Houston would clearly be more convenient. In addition, a trial in Houston would likely be more convenient for Mr. Jean, Seamar's former General Manager, since he resides in Houston at least part of the time. On the other hand, a trial in Marshall would clearly be more convenient for Plaintiff's current cardiologist, landlord, and supervisor, all of whom live in Tyler, Texas within the Eastern District. The remainder of the identified witnesses live more than 100 miles from both Houston and Marshall. Mr. Duplantis lives in Morgan City, Louisiana, roughly 90 miles southwest of New Orleans. Duplantis Affidavit at ¶ 5. Mr. Duplantis has provided an affidavit stating that, although Morgan City is more than 100 miles away from both Marshall and Houston, it would be more convenient for him to travel to Houston because there are no direct commercial flights between New Orleans and Marshall. Duplantis Affidavit at ¶ 6. Similarly, Mr. Cutchall has provided a declaration that it would be more convenient for him to travel from Poplarville, Mississippi, to Houston than to Marshall for trial for the same reason. Cutchall Declaration at ¶ 2. Conversely, Mr. Ludgood, who lives in Mobile, Alabama, has provided an affidavit that it would be more convenient for him to travel to Marshall than to Houston. *See* Ludgood Affidavit at 1-2. All three of these witnesses live more than 100 miles from both Houston and Marshall, and the

Court finds that the difference in convenience for each of them of traveling to Marshall or Houston is negligible.

Finally, the Plaintiff lives in Tyler, Texas, within the Eastern District, and it would clearly be more convenient for him to attend trial in Marshall than in Houston.

In summary, there appear to be 20 identified witnesses who live in the Houston area for whom trial in Houston would be substantially more convenient than trial in Marshall. These witnesses include the vast majority of Plaintiff's treating physicians, six of the seven Seamar officer and employee witnesses, and third-party witness Mr. Jean. In contrast, there are only four witnesses for whom trial in Marshall would be more convenient—the Plaintiff and the Plaintiff's current cardiologist, landlord, and supervisor. The remainder of the witnesses will be similarly inconvenienced by attending trial in Marshall or Houston. Accordingly, the Court finds that the balance of the witnesses would find it more convenient to attend trial in Houston and that this factor weighs in favor of transfer to the Southern District of Texas.

4. *Other Practical Problems*

The Court often considers the possibility of delay and prejudice if transfer is granted, but the delay and prejudice associated with transfer is relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence." *ICHL, LLC v. NEC Corp. of America*, No. 5:08-cv-65, 2009 WL 1748573, at *12 (E.D. Tex. June 19, 2009) (quoting *In re Horseshoe*, 337 F.3d 429, 434 (5th Cir. 2003)). This case was filed on May 28, 2010, and Defendants answered in August 2010. *See* Original Complaint (Dkt. No. 1); Original Answer (Dkt. No. 7). The Court held a scheduling conference in October 2010, and set the case for a bench trial in April 2011. *See* Notice of Scheduling Conference (Dkt. No. 8); Docket

Control Order (Dkt. No. 12). However, Defendants waited until January 2011, five months after they answered and less than three months before the original bench trial was set, to file their motion to transfer. *See* Motion to Transfer (Dkt. No. 26).[2] The bench trial is currently set for June 2011, only one month away, and transfer of this case to the Southern District of Texas will likely significantly delay the trial. This likely delay in the trial date, coupled with defendants five month delay in filing the motion to transfer, makes this factor weigh slightly against transfer.

5. *The Administrative Difficulties Flowing from Court Congestion*

The Court may consider how quickly a case will come to trial and be resolved. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Citing to judicial statistics which indicate that the time to trial in the Southern District is 22.5 months while the time to trial in the Eastern District is 25.8 months, Defendants argue that the Southern District disposes of cases more quickly than this district and that this weighs in favor of transfer. However, the Court notes that this case is currently set for trial in June 2011, roughly 13 months after it was filed, and significantly faster than the average time-to-trial presented by Defendants for both the Eastern District of Texas and the Southern District of Texas. Accordingly, this factor is neutral.

6. *Local Interest*

The Court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."

---

[2] The parties have since sought an extension of the trial date until June 20, 2011, for reasons unrelated to the Motion to Transfer. *See* Second Agreed Motion for Entry of Agreed Amended Docket Control Order (Dkt. No. 33).

*Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case. *See Volkswagen II*, 545 F.3d at 318. Courts may look to where the accident occurred, where the witnesses live, where the evidence is located, and where the parties live. *Id.* However, interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Id.*

Defendants argue that there is no connection between this case and the Eastern District of Texas justifying the imposition on the Court's time in adjudicating this case. Defendants further argue that the Southern District of Texas has a superior interest in the resolution of this matter because the Defendants are located there, the majority of the witnesses reside in or around Houston, and the Plaintiff resided within the Southern District at the time of the accident. Plaintiff, however, argues that because this is a bench trial, the citizens of this district will not be burdened with jury service. While it is true that the citizens of the Eastern District will not be burdened with jury service in this case, conducting a bench trial will require significant time and resources on the part of the Court. The burden on the Court's resources is not justified where, as here, the case has little connection to this district: (1) the accident did not occur here; (2) Defendants reside in the Southern District, not this distinct; (3) the Plaintiff only moved to this district after filing the lawsuit and in order to be closer to his attorneys; and (3) the vast majority of the witnesses and sources of proof are located in the Southern District, not this District. Accordingly, this factor weighs in favor of transfer to the Southern District.

### 7. *Familiarity with the Governing Law*

One of the public interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Defendants argue that the Southern District of Texas hears far more maritime personal injury cases than does the Eastern District and that this weighs in favor of transfer. However, the claims in this case are governed by federal law, and the Southern District of Texas is in no better position to apply federal law than this Court. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("The district court was further correct in concluding that it was in no better position than the Southern District of Ohio in deciding this patent case"). This factor, therefore, is neutral.

### 8. *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, and, thus, this factor is neutral.

## V. The Court Grants Defendants' Motion to Transfer

Considering all of the private and public interest factors, the defendants have met their burden of showing that the Southern District of Texas is "clearly more convenient" than the Eastern District of Texas. *See Volkswagen II*, 545 F.3d at 315. Four factors weigh in favor of transfer: the relative ease of access to sources of proof; the availability of compulsory process to secure the attendance of non-party witnesses; the cost of attendance of willing witnesses; and the local interest in the litigation. On the other hand, only one factor weighs against transfer: the practical problem that transfer will result in a delay in the trial of the case. Therefore, Defendants' motion to transfer venue is GRANTED.

## VI. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' Motion to Transfer Venue to the Southern District of Texas (Dkt. No. 26) and TRANFERS this case to the Southern District of Texas, Houston Division.

The Court also OVERRULES Defendants' objections to the affidavits of Messers. Ludgood, Derryberry, and Vargas attached to Plaintiff's response to the motion to transfer venue and DENIES Defendants' Motion to Strike these affidavits (Dkt. No. 40).

It is so ORDERED.

SIGNED this 20th day of May, 2011.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE